J. S29031/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ADOPTION OF J.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF:  T.F., MOTHER | : | |
| | : | No. 329 EDA 2019 |

Appeal from the Decree Entered January 2, 2019,
in the Court of Common Pleas of Montgomery County
Orphans' Court Division at No. 2018-A0128

BEFORE:  BENDER, P.J.E., LAZARUS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:                    **FILED JULY 23, 2019**

T.F. ("Mother") appeals from the January 2, 2019 decree entered in the Court of Common Pleas of Montgomery County, Orphans' Court Division, involuntarily terminating her parental rights to her dependent child, J.F., male child, born in October of 2010 ("Child"), pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), (2), (8), and (b).[1]   After careful review, we affirm.

---

[1] We note that the record reflects that by final decree entered on January 2, 2019, the trial court also terminated the parental rights of birth father ("Father") to Child.  (Final decree terminating parental rights of birth father, 1/2/19.)  In correspondence filed with this court on May 20, 2019, however, Father's counsel incorrectly states that Father "voluntarily relinquished his parental rights" and then notifies this court that Father has "no position regarding the appeal."  (Correspondence to Prothonotary, Superior Court of Pennsylvania, from Richard J. Tomkins, Esquire, 5/20/19.)

The record further reflects that the trial court appointed a guardian **ad litem** for Child who also served as Child's legal counsel.  In this case, Child was eight years old at the time of the termination hearing.  The record reflects that Child has special needs resulting from autism and attention deficit

The trial court set forth the following findings of fact:

> [Child] entered into [Montgomery County Office of Children and Youth ("OCY")] custody due to an emergency order on August the 5th, 2016[2] -- that's the date of the emergency order -- after [M]other's arrest for fighting, drug use and drug sales. Prior to this placement OCY had received 13 case referrals regarding [M]other.[3]
>
> . . . . The birth father [("Father")] is not a resource for [Child]. One year after [Child's] placement a paternity test identified [Father] as the birth father.
>
> In the spring of 2017 OCY located [Father], but he has not responded to OCY contact attempts, nor has he had contact with [Mother] during this placement period.
>
> I also note that despite receiving notice[, Father] failed to show up for the [termination of parental rights] hearing.

---

hypersensitivity disorder. Child's legal counsel and guardian **ad litem** stated at the termination hearing that based on her interactions with Child, there is no conflict between his best and legal interests. (Notes of testimony, 11/28/18 at 153-154.) Therefore, because no conflict existed between Child's legal and best interests, Child's guardian **ad litem** was permitted to represent Child's legal interests. **See In re T.S.**, 192 A.3d 1080, 2018 Pa. LEXIS 4374, 2018 WL 4001825, at *10 (Pa. 2018) (stating that "during contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian **ad litem** representing the child's best interests can also represent the child's legal interests."). **See also In re D.L.B.**, 166 A.3d 322, 329 (Pa.Super. 2017) (stating that "separate representation would be required only if the child's best interests and legal interests were somehow in conflict.").

[2] The record reflects that Child was adjudicated dependent on August 16, 2016. (Order of adjudication – dependent child, 8/16/16.)

[3] Mother's caseworker testified that the 13th General Protective Services referral came in on June 15, 2016 and "concern[ed] drug use in the home and possible manufacturing of drugs in the home where small children live." (Notes of testimony, 11/26/18 at 59-60.)

[Child] is a child with developmental special needs. When born he tested positive for marijuana. Since entering OCY custody[, Child] has been diagnosed with ADHD and autism. He has seen a mobile therapist, a behavioral specialist and a trauma therapist in addition to receiving Family Based Services.

As a result of her arrest on August 6, 2016, [Mother] pled guilty to the felony charge of possession with intent to distribute and received a sentence of four years [of] probation on December 11, 2017.

This sentence was issued along with or concurrent to several probation violations on the same day, in addition to a guilty plea to a misdemeanor of the third degree, disorderly conduct charge, for the August 5, 2016, arrest. August 5 or August 6, on or about August 5.

Since the guilty plea date[, Mother] has had subsequent contacts with our criminal justice system. They include a DUI arrest on March 7, 2017, where she received a time-served sentence. And on October 1, 2018, [Mother] was arrested for an additional possession with intent to distribute charge. She is still in jail at this point awaiting disposition of that charge.

[Mother's] initial involvement with OCY after her arrest in August of 2016 was promising. She tested positive for marijuana in August and September of 2016. By mid-October the tests were negative and visits with [Child] increased and even became unsupervised.

[Mother's] urine test on January 19, 2017, was positive for PCP and the visits then reverted to two-hour supervised visits.

Since then[, Mother] failed to meet Family Service Plan goals. OCY offered Time Limited Family

Reunification in September of 2016. [M]other voluntarily terminated those services in April of 2017.

[Mother] consistently tested positive for drugs and failed to take advantage of treatment options. She successfully completed one drug program, Aldie, yet continued to test positive on future urine tests.

[Mother] failed to obtained [sic] psychological and psychiatric evaluations so that if mental health issues existed they could not be addressed as required under the Family Service Plan.

[Mother] consistently attended visits made available by OCY. During those visits she consistently had inappropriate conversations[4] with [Child] despite counseling.

The parental bond is tenuous and predicated upon meeting the needs of [Mother]. [Child] has remained with the same foster family since his placement with OCY. The home is a supportive environment where [Child] looks to the foster parents for guidance and to meet his needs in a loving relationship. He is bonded with his foster parents.

I will now address factors as they relate to my decision.

I am unable to consider the issue of mental health as a factor.

The Family Service Plans, namely Exhibit[s] 3 and 4, require [Mother] to get a psychiatric and a psychological evaluation. Exhibit No. 4 lists no progress for that effort, whereas Exhibits 3 and 5 list progress as minimal in meeting that goal. No evidence was presented at trial regarding [Mother's]

---

[4] The caseworker provided examples of the inappropriate conversations Mother had with Child, which included Mother's telling Child that she was fighting with her lawyer, that her lawyer was not doing his job, that OCY was not doing its job, and that Child's foster parents would "turn [Child] gay." (Notes of testimony, 11/26/18 at 96-97.)

mental health concerns other than the fact that she failed to receive the required assessment.

Notes of testimony, 1/2/19 at 6-10.

I acknowledge [Mother's] current participation in the parenting classes while incarcerated at Montgomery County Correctional Facility despite earlier opportunities for improvement in that area.

Furthermore, [Mother's] continued behavior that makes her subject to incarceration, knowing she is on probation, is troublesome and it belies the sincerity of her attempts to improve.

[C]hild's safety is the paramount concern of this Court. Substitute care as provided in foster care is only a temporary setting. It is not a place for children to grow up.

The bulk of the evidence received in this matter focused on parental drug use, so I will next address that factor. In addition to [Mother's] admitted use, the evidence of drug testing with the petitioner reveals predominantly positive tests for PCP with occasional marijuana results. [Mother's] continued drug use and her resulting incarcerations in the plural make it impossible for her to provide the parental care, control, housing, nutrition, comfort and support necessary for the child's physical and mental well-being.

*Id.* at 12-13.

In this case the testimony clearly established that there is affection and that [Mother] cares for and interacts with [C]hild. Throughout my deliberations I consistently viewed the photos. This showed me pictures of concern and care for [Child]. [Mother] has maintained throughout her visits consistent contact, yet inappropriate contact, and the Court received credible testimony that there is a tenuous parental bond between [C]hild and [Mother] in this matter.

>The pictures provided by [Mother] unfortunately only tell one side of the story. In this case I find that a limited parental bond exists between [Mother] and [Child]. I find that there is no parental bond between [Child] and [Father]. However, I find that a strong bond exists between [Child] and the foster parents. Therefore, I find from the evidence and the testimony that termination of the birth parents' rights best serves the needs and the welfare of [Child], and that termination of the parental rights will not irreparably harm [Child].

*Id.* at 18-19.

The record reflects that Mother filed a timely notice of appeal, together with a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). At the termination hearing, the trial court stated that it explained its termination decision on the record "to satisfy the Pennsylvania Rule of Appellate Procedure 1925(a)[(2)(ii)]." (Notes of testimony, 1/2/19 at 2.)

Mother raises the following issues for our review:

> 1. Did the Honorable Trial Court commit error in terminating the parental rights of Mother, pursuant to Pa. C.S.[A.] §2511(a)(1), when the testimony at trial demonstrated that Mother has made determined and courageous efforts to address her addiction issues and at no point has evidenced a settled purpose of relinquishing her parents [sic] claim nor has she failed or refused to perform parental duties?

> 2. Did the Honorable Trial Court commit error in terminating the parental rights of Mother, pursuant to Pa. C.S.[A.] §2511(a)(2), when the testimony at trial demonstrated that Mother has made determined and courageous efforts

> to address her addiction issues and has successfully remedied any alleged causes of the [C]hild's separation from Mother?

> 3.    Did the Honorable Trial Court commit error in terminating the parental rights of Mother, pursuant to Pa.C.S.[A.] §2511(a)(8), when the testimony at trial demonstrated that (i) the conditions which led to the removal of [C]hild have been remedied by Mother's determined efforts to address her addiction issues, and (ii) termination of Mother's parental rights would not serve the needs and welfare of [C]hild given the strong and living [sic] bond between Mother and [C]hild?

> 4.    Did the Honorable Trial Court commit error in terminating Mother's parental rights where the facts demonstrated that a strong and loving bond exists between Mother and [C]hild and the petitioner failed to establish by clear and convincing evidence that termination was in the best interest of [C]hild as contemplated by 23 Pa.C.S.[A.] §2511(b)?

Mother's brief at 2.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different

result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have

defined clear and convincing evidence as that which is so "clear, direct,

weighty and convincing as to enable the trier of fact to come to a clear

conviction, without hesitance, of the truth of the precise facts in issue."

*In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting

*Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

Here, the trial court terminated Mother's parental rights pursuant to

Sections 2511(a)(1), (2), and (8), as well as (b). We have long held that, in

order to affirm a termination of parental rights, we need only agree with the

trial court as to any one subsection of Section 2511(a), as well as

Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004)

(*en banc*). Here, we analyze the trial court's termination decrees pursuant

to Sections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard
> to a child may be terminated after a petition
> filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued
> incapacity, abuse, neglect or refusal
> of the parent has caused the child
> to be without essential parental
> care, control or subsistence
> necessary for his physical or mental
> well-being and the conditions and
> causes of the incapacity, abuse,
> neglect or refusal cannot or will not
> be remedied by the parent.

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are

required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

With respect to incarcerated parents, in *In re Adoption of S.P.*, our supreme court held as follows:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(2). *See e.g. Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (Pa. 1986) ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, [944 A.2d 79, 85 (Pa.Super. 2008)] (holding termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs). If a court finds grounds for termination under subsection (a)(2), a court must determine whether termination is in the best interests of the child, considering the developmental, physical, and emotional needs and welfare of the child pursuant to § 2511(b). In this regard, trial courts must carefully review the individual circumstances for every child to determine, *inter alia*, how a parent's

> incarceration will factor into an assessment of the child's best interest.

*In re Adoption of S.P.*, 47 A.3d at 830-831.

Here, the trial court terminated Mother's parental rights under Section 2511(a)(2) because it found:

> clear and convincing evidence that [Mother's] drug use creates a parental incapacity and has resulted in the neglect of parental duties and an inability to provide a safe and secure home for [Child]. Moreover, this drug use is a condition that led to the removal of [C]hild from [Mother's] care and [the trial court finds] that OCY has demonstrated that this condition cannot and will not be remedied by [Mother] within a reasonable period of time.
>
> While [Mother] has been clean and sober for very brief periods of time, including her incarceration, she has repeatedly relapsed, leaving [Child] without adequate parental care and supervision.
>
> Given the length of time that [Child] has been placed in foster care, OCY has demonstrated that the conditions that led to his removal from the home cannot or will not be remedied within a reasonable time.

Notes of testimony, 1/2/19 at 13.

We conclude that the record supports the trial court's factual findings and that the trial court did not abuse its discretion in terminating Mother's parental rights under Section 2511(a)(2). The record demonstrates that the conditions that existed upon removal establish repeated and continued incapacity, abuse, neglect, or refusal of Mother that caused Child to be without essential parental care, control, or subsistence necessary for his physical or

mental well-being. The record also supports the trial court's conclusion that Mother continued to lack capacity to parent Child.

We now turn to whether termination was proper under Section 2511(b). As to that section, our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa.Super. 2012). In ***In re E.M.***, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

***In re T.S.M.***, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219, quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

In her appellate brief, Mother rehashes the trial testimony in an effort to convince this court to reach a different result. (*See* Mother's brief at 21-23.) Where, however, as here, the record supports the trial court's findings of fact and credibility determinations, we are bound by those findings

and determinations. ***See T.S.M.***, 71 A.3d at 267 (citation omitted). Mother also contends that termination "will deny [] Child the opportunity to pursue a relationship with a mother who dearly loves him and desperately wants to be a productive citizen and positive part of his life." (Mother's brief at 22-23.) Mother's argument, however, fails to address the primary consideration under Section 2511(b), which is Child's developmental, physical, and emotional needs and welfare.[5]

Here, the record supports the trial court's determination that termination of Mother's parental rights is in Child's best interest. The caseworker testified that termination is in Child's best interest because Child needs permanency and needs to know he is safe and in a stable home. (Notes of testimony, 11/26/18 at 86, 117.) She also testified that termination will not detrimentally impact Child, so long as he remains with his foster parents and continues to receive the services that he needs. (***Id.*** at 86.) The caseworker also stated that Child's foster parents have made every effort to put services in place for Child and that they help Child with his issues. (***Id.*** at 85.) Child looks to his foster parents for guidance and support. (***Id.***)

Child's foster mother testified that Child is loved, safe, and happy. (Notes of testimony, 12/5/18 at 4.) She stated that since Child has been in

---

[5] We note that Mother further claims that the trial court "unduly relied on caseworkers from [OCY], as opposed to expert testimony." (Mother's brief at 22.) It is well settled that when evaluating a parental bond, expert testimony is not required and caseworkers may offer evaluations. ***See In re Z.P.***, 94 A.2d at 112.

her care and receiving needed services, "he has come a really long way" in managing his emotions and becoming self and socially aware. (*Id.* at 6.) Child is also doing "great" in school. (*Id.*) Foster mother described her relationship with Child as "sort of typical of a parent-son" relationship with "[l]ots of love and laughter and clear boundaries, predictability." (*Id.* at 7.) Foster mother also stated that she and her wife are willing to be adoptive resources. (*Id.*)

Our review of the record supports the trial court's determination that termination was proper under Section 2511(b).

In conclusion, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under Sections 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/19